IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


John W. Durnell,                     :

        Plaintiff,                   :

    v.                               :          Case No. 2:12-cv-0765

                                     :          JUDGE ALGENON L. MARBLEY
Commissioner of Social Security,         Magistrate Judge Kemp

        Defendant.                   :

REPORT AND RECOMMENDATION

I.  Introduction

        Plaintiff, John W. Durnell, filed this action seeking review
of a partially favorable decision of the Commissioner of Social
Security which granted his application for disability insurance
benefits beginning on November 1, 2008.  Plaintiff had alleged,
in his application, that his disability began on January 31,
2006.

        After an Administrative Law Judge held a hearing and
rendered the initial partially favorable decision, the Appeals
Council remanded the case for further consideration of the issue
of disability between January 31, 2006 and November 1, 2008.
Plaintiff was given a second hearing before a different
Administrative Law Judge on that issue March 23, 2011.  In a
decision dated April 13, 2011, the ALJ denied benefits for the
period in question.  That became the Commissioner's final
decision on June 26, 2012, when the Appeals Council denied
review.

        After plaintiff filed this case, the Commissioner filed the
administrative record on January 14, 2013.  Plaintiff filed his
statement of specific errors on April 19, 2013.  The Commissioner
filed a response on May 23, 2013.  Plaintiff filed a reply brief

on June 7, 2013, and the case is now ready to decide.

    II.  <u>Plaintiff's Testimony at the Administrative Hearing</u>

Plaintiff, who was 50 years old at the time of the first administrative hearing and who has a high school education, testified as follows.  His testimony appears at pages 30-56 and pages 84-100 of the administrative record.  He also provided some testimony at the first hearing in response to questions from the medical expert.

At the time of the first hearing, plaintiff was receiving long-term disability benefits.  He had not driven in the past fifteen years due to poor eyesight.  He had not worked since January 31, 2006.

Plaintiff's past work included being a line worker at the Honda transmission factory, a job he held for 23 years.  That job required him to stand all day but did not require much lifting. He had been in pain for some time even while working, was on pain medication, and had problems with his back and knee to the point where his foot would swell and he was unable to get his work boots on.  His first back surgery was a failure.

Plaintiff described his back pain as radiating into both legs.  It prevented him from squatting or walking up steps without experiencing severe pain.  Medication took the edge off the pain but did not eliminate it.  In response to a series of questions from the ALJ on this subject, plaintiff denied any drug-seeking behavior and any marijuana use.

Upon further questioning by his attorney, plaintiff testified that he was having problems doing his job due to the bending, standing, and constant looking down that the job required.  He had attempted to deal with the pain and work without using narcotic medications but was told that was not possible.  He had no insurance and was unable to have any additional back surgery for that reason.

At the second administrative hearing, plaintiff testified that he had had injections for his back and physical therapy as

well.  During the period in question, he took medication.  He
also had knee injections but they did not help.  He needed a knee
replacement but did not have the money to obtain it.  He was also
going through a divorce and was depressed.  He had one
psychiatric hospitalization due to thoughts of suicide.  He did
not sleep well during that time period.  He could walk 100 feet
and stand for one-half hour back then, and could only sit for
half an hour.  He had been placed on light duty by his doctor and
was only supposed to lift ten pounds.  Knee pain was his most
severe problem, however.

In a typical day from 2006 to 2008, plaintiff would watch
television or listened to music.  He went out to eat
occasionally.

### III.   The Medical Records

The medical records in this case are found beginning on page
364 of the administrative record.  The Court summarizes the
pertinent records as follows.  Because plaintiff's statement of
errors concerns itself exclusively with opinions from mental
health sources addressing plaintiff's ability to perform tasks
with or without the need for written or pictorial cues, this
summary will focus on the evidence pertaining to that issue.

Plaintiff underwent a psychological consultative
examination on July 12, 2006, which was performed by Dr. Hrinko.
At that point, plaintiff had never seen a counselor or other
mental health professional for depression, but was taking anti-
depressant medication.  Dr. Hrinko viewed plaintiff's depression
as moderate in severity and rated his GAF at between 40 and 45.
He thought plaintiff would be the most limited in his abilities
to deal with work stress, to maintain attention to perform simple
and repetitive tasks, and to recall information efficiently and
accurately, all apparently due to his pain.  No mention was made
of the need for written or pictorial job cues.  (Tr. 436-38).

Dr. Dietz, a state agency reviewer, also expressed an opinion about plaintiff's psychological limitations.  He agreed with Dr. Hrinko's report in large part, saying that "[w]eight is given to the report from Dr. Daniel Hrinko regarding functional domains."  Dr. Dietz concluded that "[t]he claimant does have some limitations.  However, significant functional capacity remains.  The claimant remains capable of following simple instructions, though his ability to concentrate may require written and pictorial cues to remind of task requirements."  He added some other limitations as well.  (Tr. 500-16).  Another state agency reviewer, Dr. Flynn, concurred in this assessment. (Tr. 499).

The balance of the records relate primarily to plaintiff's physical condition, which is not in dispute in this appeal. There are records of a psychiatric hospitalization, but they do not contain any opinions as to long-term or chronic psychological limitations.

### IV.  The Medical Testimony

At the first administrative hearing, Dr. Ronald Kendrick testified as a medical expert.  His testimony begins at page 100 of the record.

Dr. Kendrick stated that the medical records in the file supported diagnoses of spondylosis of L5 and S1, disc protrusions at L3 to L5, a non-union of an L5-S1 fusion, severe osteoarthritis of the left knee, and disc protrusions at C5 through C7.  Dr. Kendrick also identified depression as a documented impairment but could not comment on its effect on plaintiff's ability to work.  None of plaintiff's physical impairments were severe enough to satisfy the requirements found in the Listing of Impairments.  Dr. Kendrick thought plaintiff capable of doing sedentary work.  He also agreed that the underlying medical conditions of record were severe enough to be

causing the type of pain plaintiff was reporting.

Dr. Mary Eileen Buban, also a medical expert, testified at the second administrative hearing.  Her testimony begins at page 56 of the administrative record.

Dr. Buban, who is a clinical psychologist, stated that the medical records showed a diagnosis of depression but not a personality disorder.  That latter impression is found in the consultative examiner's notes.  She did not think that plaintiff's depression met or equaled an impairment found in the Listing of Impairments.  She would have restricted plaintiff to the performance of simple and detailed tasks, to occasional contact with others, and to work with no strict production quotas or time standards.  Also, his job requirements should not change frequently.  She did agree that certain restrictions found in Exhibit B23F, which suggested that plaintiff might need written and pictorial clues to remind him of task requirements, could be added to that assessment.

### V.   The Vocational Testimony

Vocational experts also testified at both administrative hearings.  The first, Mr. Brown, identified plaintiff's past relevant work as a small parts assembler, which is a light skilled job.  He was asked questions about a hypothetical person who could do light work but could not balance or crouch or climb ladders, ropes and scaffolds, and who could occasionally stoop, kneel and crawl.  The person also had to avoid even moderate exposure to hazards, heights, dangerous equipment and driving. In addition, the person was limited to following simple instructions and might require written and pictorial cues to remind him of tasks and needed a relatively static environment where relationships were kept to a superficial level.  Mr. Brown testified that such a person could not do plaintiff's past work. However, he could do jobs like inspector or assembler, and such

jobs existed at both the light and sedentary exertional levels.
On the other hand, if the person were to be distracted from his
task by pain, he could not work.  (Tr. 110-15).

The second vocational expert, Mr. Braunig, said that
plaintiff's past work was motor vehicle assembler, a job that is
medium and unskilled.  If someone with plaintiff's background
could work at the light exertional level, had some postural
restrictions, could not work on uneven surfaces, and could do
only simple one- or two-step tasks requiring little if any
concentration, that person could do jobs such as a production
assembler, a survey worker, or a mail clerk, all light jobs, and
lens inserter, microfilm document preparer, or dowel inspector at
the sedentary level.  Some, but not all, of the available light
jobs would be reduced if the person was limited to low stress
work.  He also testified that the use of pictorial cues to remind
someone of tasks was usually seen only in a sheltered workshop
environment.  (Tr. 63-68).

### VI.  The Administrative Law Judge's Decision

The Administrative Law Judge's decision under review appears
at pages 11 through 20 of the administrative record.  The prior
decision, which found plaintiff disabled beginning on November 1,
2008, because he turned 50 on that date and moved into a
different age category, had concluded that plaintiff was limited
to sedentary work at all times after his alleged onset date. The
important findings in the more recent administrative decision can
be stated as follows.

The Administrative Law Judge found, first, that plaintiff
met the insured status requirements of the Social Security Act up
to March 31, 2012.  Next, he found that plaintiff had not engaged
in substantial gainful activity after his alleged onset date
through his last insured date.  As far as plaintiff's impairments
are concerned, the ALJ found that plaintiff had severe

impairments including degenerative disc disease of the lumbar
spine, degenerative joint disease of the left knee, depression,
and a history of drug abuse and addiction.  The ALJ also found
that plaintiff's impairments did not, at any time, meet or equal
the requirements of any section of the Listing of Impairments (20
C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation
process, the ALJ found that plaintiff had the residual functional
capacity to perform at least sedentary work except that he could
never climb ladders, ropes and scaffolds, could not balance or
crouch, could occasionally stoop, kneel and crawl, could not work
on uneven surfaces, could not engage in repetitive use of foot
controls on the left, and could perform only low-stress jobs with
no production quotas and which involved only simple one- or two-
step tasks requiring little, if any, concentration.
Additionally, he could have only limited contact with coworkers
and supervisors and could not do a job requiring teamwork.  The
ALJ found that, with these restrictions, plaintiff could perform
the sedentary jobs identified by Mr. Braunig such as lens
inserter, microfilm document preparer, and dowel inspector, and
that such jobs existed in significant numbers in both the
national and regional economies.  Consequently, the ALJ concluded
that plaintiff was not entitled to benefits for the period in
question.

VII.  Plaintiff's Statement of Specific Errors

In his statement of specific errors, plaintiff raises the
following issues: (1) that the ALJ did not give proper weight to
the opinions of the testifying expert, Dr. Buban, and to Drs.
Dietz and Flynn, the state agency consultants; (2) that the ALJ's
residual functional capacity assessment did not take all of
plaintiff's limitations into account; and (3) that the ALJ was
not entitled to rely on the vocational testimony because it was

premised on an inaccurate RFC.  The Court reviews the ALJ's decision using this legal standard:

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

Although plaintiff has raised three separate claims of error, they all center around one specific claim - that the ALJ should have included the need to have written or pictorial cues in his RFC assessment, and that the failure to do so was error. In order for the Court to evaluate this claim, it is helpful to review the ALJ's decision on this issue in some detail.

Here is what the ALJ had to say :

> While consideration was given to Dr. Dietz's
> opinion, the limitation in question is not supported by
> his evaluation or the evidentiary record in general.
> Dr. Dietz did not find more than a moderate limitation
> in any functional area....  The claimant is a high
> school graduate.... He is able to read and write....
> There is no evidence that he has any mental impairment
> that would require written or pictorial cues.
> Additionally, Dr. Buban testified that there is no
> evidence in the record to suggest that the claimant
> needs a sheltered workshop.  Therefore, weight will be
> given to Dr. Dietz's opinion in general.  However, no
> weight will be given to his unsupported opinion about
> written and pictorial cues.  More specifically, a
> limitation of a "requirement of written and pictorial
> cues to remind of task requirements" is rejected and
> thus not included in the claimant's RFC.  Such
> rejection is not only supported by applicable medical
> evidence or clinical findings, or the lack thereof, it
> is reinforced by the uncontroverted testimony of both
> the vocational expert and the medial expert at this
> most recent hearing.

(Tr. 18).

Parsing that explanation, plaintiff notes that three of
these factors – Dr. Dietz's statement that plaintiff had no more
than moderate limitations in function, that plaintiff is a high
school graduate, and that he can read and write – are simply
irrelevant to the question of whether he has this particular
limitation.  The Commissioner argues, however, that it was
"appropriate" for the ALJ to consider these factors, as well as
the lack of a documented mental impairment which might cause
plaintiff to need such cues, in making his decision.  That is
true, of course, if they are relevant, since they are all facts
appearing from the record.  However, as plaintiff correctly
points out, the Commissioner's memorandum is somewhat short on
explaining why it was reasonable for the ALJ to use these factors
to discount Dr. Dietz's opinion.  Because "substantial evidence"
is "such *relevant* evidence as a reasonable mind might accept as

adequate to support a conclusion," Cutlip v. Secretary of HHS, 29
F.3d 284, 286 (6th cir. 1994)(emphasis supplied), this Court must
consider whether the evidence cited by an ALJ is relevant to the
findings which that evidence purportedly supports.

There is great conceptual difficulty in permitting an ALJ to
use a finding made by a medical professional, such as Dr. Dietz,
in one portion of his report to undercut a finding made in a
different portion, at least when those findings are not in
conflict.  Nothing in this record suggests that a person with
only moderate psychological limitations may not also need some
kind of reminder in order to stay on task.  Dr. Dietz obviously
did not see the two statements in his report as mutually
exclusive, but the ALJ has read them that way.  On this record -
that is, in the absence of some other piece of evidence which
suggests an incompatibility in these two statements - it was not
reasonable to draw the conclusion reached by the ALJ.  See, e.g.,
Philips v. Comm'r of Social Security, 2012 WL 28335, *7 (N.D.
Ohio Jan. 5, 2012) ("it is apparent that an ALJ is not equipped
with sufficient knowledge or training to critique the symptoms
and resulting effects of mental disorders").  Dr. Buban's
testimony could, of course, have provided a proper foundation for
finding a problem with Dr. Dietz's analysis, but she did not
testify that the findings were incompatible in any way.  Thus,
the Court agrees that the first cited reason is not sufficient.

The ALJ's reliance on plaintiff's educational level and
literacy is even more difficult to support.  Again, there is no
evidence in the record that people with high school degrees and
with basic reading skills will never need some type of verbal or
pictorial cues to help them stay on task.  Nor is it intuitively
obvious that the ability to read, write, and function at a
twelfth-grade level are inherently inconsistent with such a need.
Again, finding a conflict between these abilities or limitations
is, on this record, not supported to a reasonable degree.

The ALJ also observed that plaintiff did not appear to have a documented impairment which could reasonably lead to this type of requirement.  That sounds very much like making a prohibited medical judgment.  Cf. Grecol v. Halter, 46 Fed. Appx. 773, 777 (6th Cir. Aug. 29, 2002) ("when there is no competing evidence, the ALJ is not permitted to substitute his opinions for those of the examining doctors").  Even if it is not, reading Dr. Hrinko's report (which Dr. Dietz gave substantial weight to) in conjunction with Dr. Dietz's report makes it evident that plaintiff's level of pain is what would distract him from staying on task as his activity level and pain both increased throughout a workday.  The record is replete with documentation that plaintiff suffers from significant pain.  Therefore, this statement which the ALJ used to support his finding - at least as the ALJ phrased it, and the Court generally looks to the ALJ's actual decision as opposed to other rationales he might have, but did not, rely on - is simply inaccurate.

   That leaves only the controversy about what Dr. Buban did or did not say about this limitation.  The Commissioner's argument is that Dr. Buban did not express it in her initial assessment of plaintiff's capabilities; that she only said that it "could be added," see Tr. 60, not that she endorsed it; and that she rejected the notion that plaintiff could function only in a sheltered workshop environment.  The latter statement is, as plaintiff notes, a vocational assessment, and the ALJ should not have relied on Dr. Buban's testimony as to that factor.  And, in fact, immediately before the language quoted from Dr. Buban's testimony, she said that Dr. Dietz's opinion was "pretty much consistent with the limits that I just gave."  Id.  Thus, it is difficult to view the conclusion that she and Dr. Dietz disagreed on this point as one with a reasonable level of support on this record.   Overall, then, the ALJ's conclusion on this rather narrow factual issue does not enjoy sufficient support to allow

the Court to sustain his finding.  When "[t]he ALJ's stated
reasons ... are without substantial support in the record,"
McHugh v. Astrue, 2011 WL 6130824, *11 (S.D. Ohio Nov. 15, 2011),
adopted and affirmed 2011 WL 6122758 (S.D. Ohio Dec. 8, 2011),
the administrative decision simply cannot be sustained.

That does not mean, however, that plaintiff is necessarily
entitled to benefits.  As the vocational expert, Mr. Braunig,
noted, there is some amount of ambiguity about the statement that
someone would need either written or pictorial cues to remind the
person of job requirements.  He testified that "the ability to
have written instructions is a higher ability than looking at
pictures," and that it was pictorial cues, not written
instructions, which were "very limited" in the employment arena
and which are not usually found outside a sheltered workshop
environment.  (Tr. 67).  From that testimony, it would seem to
make a difference if plaintiff could, during the period in
question, have functioned with just written, or even spoken,
reminders, or if he need pictures as well.  The record as it
stands makes it very hard to draw one conclusion or the other.  A
remand would permit the Commissioner to obtain some clarification
from Dr. Dietz, or an additional opinion from another source,
which would allow that uncertainty to be resolved, and which
would permit a more accurate and better-supported conclusion to
be reached about plaintiff's actual residual functional capacity
after he stopped working and prior to November 1, 2008.
Consequently, that is the course of action the Court will
recommend

## VIII.  Recommended Decision

Based on the above discussion, it is recommended that the
plaintiff's statement of errors be sustained to the extent that
the case be remanded to the Commissioner of Social Security
pursuant to 42 U.S.C. §405(g), sentence four.

## IX.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge

-13-